## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

FRUTH, INC.,

                Plaintiff,

v.                                 CIVIL ACTION NO.   3:15-16266

DON PULLIN and CONNIE PULLIN,

                Defendants.

### MEMORANDUM OPINION AND ORDER

On December 22, 2015, the Court held a hearing on Plaintiff's Motion for Preliminary Injunction. At the hearing, the Court granted Plaintiff's Motion and reserved the right to issue this opinion expanding upon and explaining its reasoning. This case, a dispute between a pharmacy company and its shareholder, was removed from the Circuit Court of Mason County, West Virginia. ECF No. 1. Plaintiff Fruth, Inc., (Fruth) operates pharmacies in West Virginia and seeks an order requiring two of its shareholders, Defendant Don Pullin (Mr. Pullin) and Defendant Connie Pullin (Ms. Pullin) (collectively "Defendants") to comply with a federal regulation requiring fingerprinting for certain shareholders of organizations providing pharmaceuticals. In response, Defendants contend that Fruth did not provide proper service of process in serving the Complaint and that this Court lacks personal jurisdiction over them. For the following reasons, the Court **GRANTED** Fruth's Motion for a preliminary injunction.

### I.      Background

According to its verified complaint, Fruth owns a chain of twenty-nine retail pharmacies operating in West Virginia, Kentucky, and Ohio. In order to receive billing privileges with

Medicare and Medicaid, each store is required to enroll with Center for Medicare and Medicaid Services (CMS) and to meet certain certification requirements set forth by federal regulation. Even after a store has been enrolled and approved, periodic review is necessary to maintain billing privileges.

By letter dated October 15, 2015 (10/15/15 Letter), CMS notified Fruth that enrollment status for Fruth's Store # 101 was being evaluated after initial enrollment of that site. The 10/15/15 Letter informed Fruth that it fell within the scope of new guidelines that require all 5% or greater owners or shareholders of organizations providing or supplying pharmaceuticals to undergo a fingerprint-based criminal background check. Defendants own approximately 18.77% of the shares of stock of Fruth and were specifically listed by CMS in the 10/15/15 Letter as persons who must undergo the fingerprint-based criminal background check.

By letter dated October 28, 2015 (10/28/15 Letter), CMS notified Fruth Pharmacy that enrollment status of Fruth's Store # 102 was being evaluated after Fruth's initial enrollment of that site. Like the previous letter, the 10/28/15 Letter cited the new CMS guidelines.

The new CMS guidelines referenced by the letter are set forth at 42 CFR § 424.518(c)(2), pursuant to which CMS or its designated contractor: "(A) Requires the submission of a set of fingerprints for a national background check from all individuals who maintain a 5 percent or greater direct or indirect ownership interest in the provider or supplier; and (B) Conducts a fingerprint-based criminal history record check of the Federal Bureau of Investigation's Integrated Automated Fingerprint Identification System on all individuals who maintain a 5 percent or greater direct or indirect ownership interest in the provider or supplier."

42 CFR § 424.518(d)(2) provides that: "In the event the individual(s) required to submit fingerprints under paragraph (c)(2) of this section fail to submit such fingerprints in accordance

with paragraph (d)(1) of this section, the provider or supplier will have its billing privileges (i) Denied under § 424.530(a)(1); or (ii) Revoked under § 424.535(a)(1)."

By letters dated November 3, 2015 (11/3/15 Letters), Fruth forwarded to Defendants the notice from CMS and requested their compliance. The 11/3/15 Letters notified Defendants of the deadline for complying with the CMS requirements and specified that Defendants would be reimbursed for any associated costs.

After a board meeting on November 20, 2015, Tom Cooke, board member and brother of Defendant Ms. Pullin, informed Lynne Fruth (President and Chair of the Board of Fruth) and Tom Willoughby (CFO of Fruth) that Defendants refused to comply with the CMS regulations. When asked to explain the reason for Defendants' decision not to comply with the CMS regulations, Mr. Cooke stated that they were frustrated with the direction of the company and dissatisfied with the way the company is managed. Mr. Cooke confirmed that this was the only reason Defendants were refusing to comply with the CMS requirements and concluded that they were "at the end of the runway." Mr. Cooke followed up by stating that if Fruth would like Defendants to "just go away," they would sell their stock to the company for $25 per share. Defendants have repeatedly expressed a desire to sell their Fruth stock, and Fruth alleges that Defendants' refusal to comply with CMS regulations is an attempt to force Fruth either to buy Defendants' stock or to risk great economic harm to the company.

Counsel for Fruth sent a letter dated December 4, 2015 (12/4/15 Letter) to Defendants requesting that they reconsider their decision and reiterating that Fruth's billing privileges could be denied or revoked if Defendants refused to comply with federal law.

By letter dated December 7, 2015 (12/7/15 Letter), Zackary Pullin advised Fruth that he is representing Defendants and directed that future correspondence be sent to him. He concluded his letter by stating that Defendants "hope to resolve this matter in a quick and amicable manner."

On December 11, 2015, counsel for Fruth called Zackary Pullin to discuss this matter, and Zackary Pullin stated his belief that the parties should "all get in a room and no one should come out until they reached a deal on how to part ways." *Compl.* ¶ 18. Zachary Pullin also stated that Defendants would not comply with CMS regulations because they believe the regulations violate their Fourth Amendment rights against unlawful search and seizure.

Fruth alleges Defendants' willingness to undergo fingerprinting on other occasions for other purposes, while refusing to undergo fingerprinting required for Fruth to maintain its billing privileges with CMS demonstrates that Defendants' assertion of an alleged infringement on their Fourth Amendment rights is merely a subterfuge. On previous occasions, one or both of Defendants have previously submitted to requirements for fingerprinting or background checks in relation to obtaining professional licenses, liquor licenses, lottery licenses, or for other purposes. For example, around 2007 Mr. Pullin provided fingerprints to the Ohio Lottery Commission for the purpose of submitting to a fingerprint-based background check. To date, Defendants have not instituted any affirmative legal action to challenge the legality of the CMS requirements.

Per letter dated December 8, 2015 (the "12/8/15 Letter"), CMS advised Fruth that Fruth's billing privileges have now been denied. The 12/8/15 Letter states that the sole reason for the denial of Fruth's CMS application is that Defendants have not complied with the fingerprint-based background check requirements. The 12/8/15 Letter states that Fruth has 30 days (until January 7, 2016) to submit a corrective action plan and to provide evidence of compliance with all Medicare requirements.

Fruth cannot comply with CMS regulations requiring fingerprints of certain shareholders unless and until Defendants undergo fingerprint-based background checks as required by CMS. All other Fruth shareholders identified by CMS as being subject to the fingerprint-based background check requirements have complied with the federal law.

Fruth alleges that if Defendants are permitted to continue to violate the CMS regulations, and the resulting denial or revocation of Fruth's billing privileges continues, it would have a devastating effect on Fruth, its employees, and thousands of customers who purchase their prescriptions from Fruth. Year-to-date, between 415,000 and 420,000 Fruth prescriptions are attributable to Medicare or Medicaid plans, resulting in revenue of approximately $21.7 million, which is about 20% of the company's pharmacy revenues. Fruth alleges that if Fruth were to lose these revenues, shareholder values would immediately and significantly be diminished. Such loss of substantial revenues would require Fruth to terminate the employment of hundreds of individuals. Fruth presently employs between 600-650 individuals. Patients would also be negatively affected in that they would have to switch pharmacies. Fruth uses a standard ratio of 2:1 prescriptions per month per patient to determine that loss of customers paying with Medicare or Medicaid would mean that approximately 18,000 patients would be required to find a new pharmacy. Additionally, Fruth offers a unique prescription delivery service that homebound customers and customers with other transportation issues rely on. In the event of Fruth's denied billing privileges, these customers may not be able to find a replacement service in a timely manner, if at all. For these reasons, Fruth alleges it will be immediately and irreparably harmed if Defendants are not required to comply with CMS's mandate for fingerprint-based background checks. Fruth further alleges the harm to Fruth, the goodwill of the company, Fruth's employees,

and Fruth's customers who obtain their medications from Fruth's pharmacies will be irreparable and cannot be adequately addressed through an award of money damages.

On December 16, 2015, Fruth filed this action in West Virginia state court. It also filed a Motion for Temporary Restraining Order or Preliminary Injunction. The state court granted Fruth's requested Temporary Restraining Order on December 16, 2015 and scheduled a hearing on a preliminary injunction for December 22, 2015.

Subsequently, Defendants removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332. Defendants are domiciled in Florida and Plaintiff is a West Virginia corporation with its principal place of business in West Virginia. ECF No. 1. Additionally, the amount in controversy exceeds $75,000 because although the Complaint does not set fort ha dollar amount, Fruth alleges Defendants' refusal to comply with CMS regulations place Fruth at risk of losing $21.7 million in annual revenue. Therefore, Defendants claimed, and the Court agrees, this Court has jurisdiction over the subject matter of this action.

On December 22, 2015, this Court held a hearing on Fruth's Motion for a preliminary injunction. For the following reasons, the Court granted Fruth's motion.

## II.    Discussion

The Court will begin resolution of this motion for a preliminary injunction by addressing Defendants' service of process argument, then their personal jurisdiction contention, and conclude by deciding the merits of Fruth's request for a preliminary injunction. Based on the analysis offered below, the Court concludes Defendants received proper service of process; the Court has personal jurisdiction over Defendants; and Fruth is entitled to preliminary injunctive relief in this case.   `

a. *Service of Process*

Defendants contend they never received proper service of the Complaint filed in state court. In cases originally filed in state court but removed to federal court, the sufficiency of process prior to removal from state court is determined under state law. *See Cardenas v. City of Chicago,* 646 F.3d 1001, 1005 (7th Cir. 2011). When state law supplies the rule for service of process, Plaintiffs may use the rules in effect in the state in which the federal court sits or, if services is effected in another state, the rules of that state as well. *See* Fed. R. Civ. P. 4(e)(1). West Virginia's long-arm statute provides service on non-residents may be accomplished by:

> leaving the original and two copies of both the summons and the complaint, and the fee required by section two [§ 59-1-2], article one, chapter fifty-nine of this code with the Secretary of State, or in his or her office, and such service shall be sufficient upon such nonresident: Provided, That notice of such service and a copy of the summons and complaint shall forthwith be sent by registered or certified mail, return receipt requested, by a means which may include electronic issuance and acceptance of electronic return receipts, by the Secretary of State to the defendant at his or her nonresident address and the defendant's return receipt signed by himself or herself or his or her duly authorized agent or the registered or certified mail so sent by the Secretary of State which is refused by the addressee and which registered or certified mail is returned to the Secretary of State, or to his or her office, showing thereon the stamp of the post-office department that delivery has been refused. After receiving verification from the United States Postal Service that acceptance of process, notice or demand has been signed, the Secretary of State shall notify the clerk's office of the court from which the process, notice or demand was issued by a means which may include electronic notification. If the process, notice or demand was refused or undeliverable by the United States Postal Service the Secretary of State shall return refused or undeliverable mail to the clerk's office of the court from which the process, notice or demand was issued. If any defendant served with summons and complaint fails to appear and defend within thirty days of service, judgment by default may be rendered against him or her at any time thereafter. The court may order such continuances as may be reasonable to afford the defendant opportunity to defend the action or proceeding.

W. Va. Code § 56-3-33.

Here, the Court finds Fruth has provided or will provide service of process in compliance with the rules of West Virginia and Fourteenth Amendment to the United States Constitution. Plaintiffs filed their Complaint on December 16, 2015. Service of a Complaint in West Virginia must be completed within ninety days. W. Va. Code § 56-3-5. So far in this case, Fruth has provided the Court with copies of its 11/3/15 Letters, which Fruth sent to Defendants by certified mail. Those letters informed Defendants about the subject of this action, and although they do not themselves indicate Plaintiffs have already provided service of process, their manner of delivery indicates Fruth is more than capable of completing service within the time for such. For these reasons, the Court denies Defendants' motion to dismiss for insufficient service of process.

   *b.  Personal Jurisdiction*

Next, Defendants contend the Court lacks personal jurisdiction over them because they, as residents of Florida and mere stockholders in Fruth, have insufficient contacts with West Virginia. Based on the foregoing analysis, the Court disagrees and finds it has both specific personal jurisdiction and general personal jurisdiction over Defendants.

### 1.  The Court Has Specific Personal Jurisdiction Over Defendants

"[T]he West Virginia long-arm statute is coextensive with the full reach of due process . . . ." *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997). "To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interests here would not 'offend traditional notions of fair play and substantial justice.'" *Vass v. Volvo Trucks N. Am., Inc.*, 304 F.Supp.d 851, 854 (S.D. W. Va. 2004) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The inquiry into the existence of personal jurisdiction requires application of a two-pronged test. First, the Court must consider whether the "out-of-state person ha[s] engaged in some activity purposefully directed toward the forum state."

*Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994). Second, "if that initial test is met, a court must still determine whether the exercise of such jurisdiction would offend traditional notions of fair play and substantial justice."

Under the purposeful availment prong, the question is whether "the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state[.]" *Id.* at 945-46. So long as Defendants purposefully availed themselves of the laws and benefits of the forum and the litigation arises from those activities, it is not necessary that Defendants ever actually entered the forum state. *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987) (citations omitted). In this case, Fruth alleges Defendants have breached a fiduciary duty owed to Fruth by refusing to comply with CMS's fingerprint requirement for certain shareholders of organizations providing pharmaceuticals. If Defendants have breached a fiduciary duty owed to Fruth, this constitutes a tortious injury caused in West Virginia and inflicted on a West Virginia Corporation. This is not a case where the sole basis for asserting personal jurisdiction over Defendants is their status as shareholders of a West Virginia corporation. *See Shaffer v. Heitner*, 433 U.S. 186, 214 (1977); *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 526 (4th Cir. 1987). Additionally, the CMS regulations create a unique obligation for shareholders of pharmacies, and by deciding to retain stock in a pharmacy Defendants have created a continuing obligation between themselves and a corporation of the forum state. *See Pittsburgh Terminal*, 831 F.2d at 529. Therefore, the Court finds Defendants have purposefully availed themselves of the laws and benefits of West Virginia by holding stock in a West Virginia pharmacy and the litigation arises from those activities, namely Defendants' alleged breach which had its effect in West Virginia. *See Pittsburgh Terminal*, 831 F.2d at 527–29.

Under the fair play and substantial justice prong, courts considers the following factors: "[1] the burden on the defendant, [2] the forum state's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies." *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 529 (4th Cir. 1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)). Considering factor (1) in this case, Mr. Pullin is currently licensed to practice as a pharmacist in West Virginia, and presumably such a license has continuing obligations that bring him back to the state of licensure. Additionally, Defendants own an LLC in West Virginia that is unrelated to this action, and therefore, presumably have dealings with the LLC that might require them to conduct business in West Virginia. There are no facts alleged that it would be unfair or particularly difficult for Defendants to travel to West Virginia in order to defend a suit here. Therefore, the Court finds the burden on Defendants to defend a suit in West Virginia is minimal. Under factor (2), West Virginia has a strong interest in providing a claim where shareholders have allegedly breached a fiduciary duty by refusing to comply with obligations imposed on them by federal law. Applying factor (3), Fruth has a strong interest in obtaining convenient and effective relief because if Defendants are permitted to continue to violate federal law, as is alleged here, Fruth will lose 20% of its income. Factor (4) weighs in favor of asserting personal jurisdiction here because West Virginia's choice of law would apply to this cause of action, and therefore, the interstate judicial system's interest in obtaining the most efficient resolution of controversies is served by permitting Fruth to bring its claim against Defendants in West Virginia where courts are most familiar with West Virginia law. Under factor (5), the shared interest of the several States in furthering fundamental substantive social policies

weighs in favor of having this matter resolved as quickly as possible in order to avoid consumers of Fruth pharmaceuticals losing their choice of pharmacy and diminished competition in the pharmaceutical community in and near West Virginia.

### 2.  The Court Has General Personal Jurisdiction Over Defendants

When a defendant has such "continuous and systematic" contacts with the forum state that the defendant is essentially "at home" there, the courts of the forum will have personal jurisdiction over the Defendant for all claims, even those unrelated to Defendant's contacts with the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*,   __ U.S. __, __, 131 S. Ct. 2846, 2851 (2011). Based on Defendants' maintaining a pharmacist's license in West Virginia, membership in a West Virginia LLC, and stock in Fruth, a West Virginia corporation, the Court can infer that Defendants engage in substantial activities within West Virginia such that Defendants have continuous and systematic contacts with the Forum State placing them at "home" within West Virginia, even if they reside some substantial period of time in Florida.

### c.  *Preliminary Injunctive Relief*

Fruth seeks a preliminary injunction requiring Defendants to comply with 42 C.F.R. 424.518(c)(2), which requires them to submit fingerprints to CMS. "A preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997) (internal quotation marks and alteration omitted). A plaintiff seeking a preliminary injunction must establish that (1) she or he is likely to succeed on the merits, (2) she or he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); *Melvin v. Soc. Sec. Admin.*, 619 F. App'x 259 (4th Cir. 2015) (citing *Dewhurst*

*v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011)); *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013). Before granting a preliminary injunction, each *Winter* factor must be considered by the court and "satisfied as articulated." *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013). After considering each of the *Winter* factors below, the Court finds each weighs in favor of granting the preliminary injunction Fruth seeks.

### 1. Fruth is Likely to Succeed on the Merits

First, plaintiffs seeking preliminary injunctions must demonstrate that they are likely to succeed on the merits. *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013) (citing *Winter*, 555 U.S. at 20). "Although this inquiry requires plaintiffs seeking injunctions to make a 'clear showing' that they are likely to succeed at trial, plaintiffs need not show a certainty of success." *Id.* (citations omitted). To succeed at trial, Fruth will need to show that Defendants breached a fiduciary duty owed to Fruth under West Virginia law by refusing to comply with 42 C.F.R. 424.518(c)(2). Although the West Virginia Supreme Court of Appeals has not previously identified the precise elements of a breach of a fiduciary duty, courts have held that such a cause of action requires the existence of the fiduciary relationship, its breach, and damage proximately caused by that breach. *State ex rel. Affiliated Const. Trades Found. v. Vieweg*, 520 S.E.2d 854, 868-69 (W Va. 1999) (Maynard, J., concurring) (citing *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 3 Cal.Rptr.2d 236, 240 (1991)). "[O]wners of the majority of shares of the corporation occupy the position of fiduciary." *Meadows v. Bradshaw-Diehl Co.*, 81 S.E.2d 63, 69 (W Va. 1954). Here, Fruth contends Defendants owe a fiduciary duty to Fruth and they have breached their fiduciary duty by refusing to comply with CMS's regulation requiring fingerprints from certain shareholders.

Under these circumstances, the Court finds Defendants owe a fiduciary duty to Fruth under West Virginia law. Defendants own a plurality of Fruth's stock, owning more than any other

shareholder. As such, Defendants exercise more power over Fruth than any other single shareholder.

Furthermore, the Court finds Defendants breached their fiduciary duty owed to Fruth, Based on CMS's letters to Fruth, the Court finds that Defendants fall within the CMS regulations' fingerprint requirement. Thus, Defendants, as owners of more than 5% of the stock of a pharmacy, are obliged by federal law to undergo fingerprinting. Defendants have refused to comply with CMS's regulation, and as a result, Fruth has had its Medicare and Medicaid billing privileges revoked. A shareholder's deliberate refusal to comply with federal law that in turn injures the company is a breach of the fiduciary duty the shareholder owes to the company.

In considering Fruth's likely success on the merits, the Court notes that Defendants reportedly contended that the federal regulation requiring them to submit fingerprints to CMS violates their Fourth Amendment right to be free of unreasonable searches and seizures. The Court finds this argument without merit. The fingerprinting CMS requires does not implicate the Fourth Amendment because an individual does not have a reasonable expectation of privacy in their fingerprints. *Cupp v. Murphy*, 412 U.S. 291, 295 (1973). And even if individuals have a reasonable expectation of privacy in their fingerprints, CMS collects fingerprints in order to prevent billing fraud and as a prerequisite for participating in a federal spending program, and it does not use them for investigating or prosecuting ongoing criminal activity.

Based on the analysis above, the Court finds Fruth is likely to succeed on the merits.

**2.  Fruth is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief**

"[Second], a party seeking a preliminary injunction must prove that he or she is 'likely to suffer irreparable harm in the absence of preliminary relief.'" *Pashby*, 709 F.3d at 328 (citing and quoting *Winter*, 555 U.S. at 20). In this case, Fruth alleges it will suffer immediate and irreparable

harm in the absence of temporary injunctive relief. If Defendants are permitted to continue to violate the CMS regulations, and the resulting denial or revocation of Fruth's billing privileges continues, it would have a devastating effect on Fruth, its employees, and thousands of customers who purchase their prescriptions from Fruth. Year-to-date, between 415,000 and 420,000 Fruth prescriptions are attributable to Medicare or Medicaid plans, resulting in revenue of approximately $21.7 million, which is about 20% of the company's pharmacy revenues. Fruth alleges that if Fruth were to lose these revenues, shareholder values would immediately and significantly be diminished. Such loss of substantial revenues would require Fruth to terminate the employment of hundreds of individuals. Fruth presently employs between 600-650 individuals. Patients would also be negatively affected in that they would have to switch pharmacies. Fruth uses a standard ratio of 2:1 prescriptions per month per patient to determine that loss of customers paying with Medicare or Medicaid would mean that approximately 18,000 patients would be required to find a new pharmacy. Additionally, Fruth offers a unique prescription delivery service that homebound customers and customers with other transportation issues rely on. In the event of Fruth's denied billing privileges, these customers may not be able to find a replacement service in a timely manner, if at all. For these reasons, the Court finds Fruth, its employees and customers will be immediately and irreparably harmed if Defendants are not required to comply with CMS's mandate for fingerprint-based background checks.

### 3.  The Balance of Equities Tips in Fruth's Favor

Third, a plaintiff seeking a preliminary injunction must "demonstrate that the balance of hardships tips in his or her favor." *Pashby*, 709 F.3d at 329 (citing *Winter*, 555 U.S. at 20). Here, the hardship threatened to Fruth by postponing injunctive relief far outweighs the hardship imposed on Defendants by granting preliminary injunctive relief.

If injunctive relief is denied until a final proceeding, Fruth will lose Medicare and Medicaid billing services for at least two, and probably more or all of its stores, until a final hearing and decision can be rendered on Fruth's request for injunctive relief. Medicare and Medicaid billing account for roughly half of Fruth's income. Fruth put forth evidence that stores without income from Medicare and Medicaid would be financially unsound, and if Fruth is entirely without this income, it too would be so financially unsound that it would be forced to file for bankruptcy and dissolve. This will burden not only Fruth, but also its employees who will be put out of work. Furthermore, losing customers who pay for pharmaceuticals through Medicare and Medicaid would be a black eye for the brand of any pharmacy. As such, the burden on Fruth is severe.

If the Court grants preliminary injunctive relief, Defendants will be required to undergo fingerprinting and to submit those fingerprints to CMS. While the Court notes that once Defendants' fingerprints are completed and submitted, Defendants' background checks completed by CMS based on those prints cannot be reversed, the extent of harm if Plaintiffs are not ultimately successful is diminished by the fact that Defendants have previously provided their fingerprints for background checks necessary for other purposes, such as licenses. *See Compl.* ¶ 25, ECF No. 1-1. Additionally, to mitigate the cost of fingerprinting imposed on Defendants, the Court can and will order Fruth to reimburse Defendants for such costs. For this reason, the Court finds the burden on Defendants posed by granting preliminary injunctive relief is minimal, if there is any at all.

### 4.  Granting Fruth's Requested Injunction is in the Public Interest

Lastly, to obtain a preliminary injunction, the party seeking such must show the injunction serves the public interest. *Pashby*, 709 F.3d at 329. The injunction sought here would require Defendants to complete the fingerprinting necessary for Fruth to comply with federal regulations that, as it stands, will not permit Fruth to bill Medicare or Medicaid for pharmaceuticals provided

by at least two of its stores. Hence, granting the injunction sought will permit Medicare and Medicaid recipients to access pharmaceuticals provided by Fruth during the pendency of this proceeding. Therefore, an injunction here will safeguard the public health and thereby serve the public interest. *Pashby*, 709 F.3d at 331 (recognizing a "robust public interest" in safeguarding access to health care for those eligible for Medicaid). This injunction will enforce an important public policy enacted by Congress.

### III.    Conclusion

To conclude, the Court finds Defendants have received or will service of process in compliance with applicable state law and the U.S. Constitution; The Court has personal jurisdiction over Defendants in this action; and Plaintiff is entitled to a preliminary injunction mandating Defendants comply with CMS regulations that require shareholders of pharmacies to submit fingerprints to CMS.

Based on the preceding analysis, the Court **GRANTED** Plaintiff's Motion for Preliminary Injunction. The Court **ORDERS** Defendants to obtain and submit to the appropriate authority the signature cards necessary for Fruth to comply with 42 C.F.R. 424.518(c)(2); Defendants must comply with this order on or before 12:00pm (noon) December 24, 2015. The Court **DIRECTS** Plaintiff to reimburse Defendants for costs reasonably necessary to obtain fingerprints in compliance with this Order, upon Defendants providing Plaintiff with a receipt for such. The Court further **DIRECTS** Defendants to post $100 bond to cover the cost to Defendants in the event that Plaintiffs are not successful on the merits. Finding insufficient evidence that Defendants acted in bad faith when they refused on Fourth Amendment grounds to submit to the federal fingerprint requirement, the Court **DENIES** Plaintiff's request for costs and fees under West Virginia Code § 55–33–10.

-16-

Due to a scheduling conflict, this case is **TEMPORARILY ASSIGNED** to Judge Johnson Thomas E. Johnston until January 7, 2016. Effective January 8, 2016 the case is **RE-ASSIGNED** to Chief Judge Robert C. Chambers.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        December 23, 2015

ROBERT C. CHAMBERS, CHIEF JUDGE